Filed June 18, 1896.

---

No. 1,707.

THE PENNSYLVANIA CO. v. WITTE.

MASTER AND SERVANT.—*Duty of Master.*—It is the duty of the master to exercise reasonable care to furnish reasonably safe places in which, and appliances with which, the servants are to work, and to exercise the same care to keep them in such condition.

SAME.—*Master's Negligence.—Assumption of Hazards by Servant.*— The servant does not assume the hazards occasioned by the master's negligent breach of his duty, unless with knowledge thereof he continues in the master's service.

SAME.—*Pleading.—Assumption of Risk.*—Knowledge on the part of a servant of the negligent failure of the master to exercise reasonable care to furnish a reasonably safe place to work, and reasonably safe appliances, is not to be regarded as included under the head of contributory negligence, but is an independent factor, the existence of which must be specifically denied, in an action for personal injuries, if relied upon.

SAME.—*Imputed Knowledge of Servant.*—A servant will be held to have knowledge of the existence of a dangerous defect in the appliances with which he works, where the defect is so open and obvious that he ought to have known it in the exercise of reasonable care in the discharge of his duties.

SAME.—*Complaint.— Sufficiency Of.*—In an action for personal injuries a general allegation of negligence, or want of contributory negligence, or knowledge of defects, is sufficient as against a demurrer, unless the facts specially pleaded show the contrary.

SAME.—*Proof.—Not Necessary to Prove All of the Averments in the Complaint.*—In an action for personal injuries, plaintiff will not be required to prove all of the acts of negligence averred in his complaint; where various acts of negligence are charged therein, it is sufficient if he prove such acts of negligence therein charged as will establish his case.

EVIDENCE.—*Reversal of Judgment on the Evidence.*—A judgment will not be reversed on appeal, unless there is an entire lack of evidence, either direct or inferential to sustain some fact absolutely necessary to its support.

SAME.—*Practice.*—A judgment will not be reversed on account of admission of evidence, where no objection was made to the question until after it was answered.

PRACTICE.—*Instruction.*—A party cannot complain of an instruction which is identical with an instruction given at his request.

From the Whitley Circuit Court.

*Zollars & Worden,* for appellant.

*L. M. Ninde,* for appellee.

GAVIN, C. J.—Appellee was injured while working in appellant's shops. For this he recovered judgment

for damages in the court below. Demurrers to the two paragraphs of complaint were overruled, with exceptions, and judgment rendered over appellant's motion for a new trial.

One paragraph of complaint alleges that appellee was employed to oil the shafting and machinery in appellant's shops, and to shovel coal; that while engaged in oiling a certain loose pulley, a belt slipped from a fast pulley along side it and set the loose pulley in motion, whereby his hand, which held the loose pulley was thrown into certain cogwheels; that this was caused by the dangerous defects in, and insufficiency of, the shifter, by which the belt was shifted from one pulley to the other, and by which it should have been kept upon the pulley on which it had been placed.

There are also general averments of knowledge upon the part of the appellant, and want of knowledge of the dangerous defects and due care upon the part of appellee, with proper averments of the negligence of appellant in so maintaining its machinery in such dangerous condition.

It is well settled, that it is the duty of the master to exercise reasonable care to furnish reasonably safe places in which, and appliances with which, the servants are to work, and to exercise the same care to keep them in such condition. It is also true, that the servant assumes all the risks ordinarily incident to the work in which he engages. But the servant does not assume the hazards occasioned by the master's negligent breach of his duty, unless with knowledge thereof he continues in the master's service, when, as a general rule (subject, however, to some exceptions, with which we have not now to deal) the servant is, in Indiana, held to assume these added hazards. *Rogers* v. *Leyden*, 127 Ind. 50 ;

*Louisville, etc., R. W. Co.* v. *Quinn*, 14 Ind. App. 554, *Evansville, etc., R. R. Co.* v. *Holcomb*, 9 Ind. App. 198; *Blondin* v. *Oolitic, etc., Co.*, 11 Ind. App. 395; *Lynch* v. *Pittsburg, etc., R. W. Co.*, 8 Ind. App. 516; *Pennsylvania Co.* v. *Burgett*, 7 Ind. App. 338.

It must also be regarded as established in this State that such knowledge as operates as an assumption of the risk, is not to be regarded as included under the head of contributory negligence, but is an independent factor or element, the existence of which must be specifically denied, as the knowledge of the master must be specifically averred. *Kentucky, etc., Bridge Co.* v. *Eastman,* 7 Ind. App. 514; *Pittsburgh, etc., R. W. Co.* v. *Woodward*, 9 Ind. App. 169; *Evansville, etc., R. W. Co.* v. *Duel*, 134 Ind. 156; *New Kentucky Coal Co.* v. *Albani*, 12 Ind. App. 497; *Louisville, etc., R. W. Co.* v. *Corps*, 124 Ind. 427.

Although the servant may not have actual knowledge of the existence of the dangerous defect, if the defect is open and obvious, so that in the exercise of reasonable care in the discharge of his duties he ought to have known it, then he will be deemed to have known that which he should have learned. *Muncie Pulp Co.* v. *Jones*, 11 Ind. App. 110; *Lynch* v. *Chicago, etc., R. W. Co., supra.*

The general averments of knowledge and want of knowledge, however, include both actual and imputed knowledge. *Evansville, etc., R. W. Co.* v. *Duel, supra; Louisville, etc., R. W. Co.* v. *Miller*, 141 Ind. 533; *Heltonville Mfg. Co.* v. *Fields*, 138 Ind. 58; *Lake Erie, etc., R. W. Co.* v. *McHenry*, 10 Ind. App. 525; *Louisville, etc., R. W. Co.* v. *Breedlove*, 10 Ind. App. 657.

Counsel, in their brief, state: "The shifter is not accurately described in the complaint. Nor is its use or connection with the belt sufficiently stated to give one a just idea of its operation." In this statement, we are of opinion counsel are sustained by the fact; but we are not, therefore, permitted to supplement the allegations of the complaint, and make them more specific by resort to the description of the machinery's working, set forth by counsel in their brief, in order to overthrow the general averments of the complaint. In actions such as this, the general averments of negligence, or want of contributory negligence, or knowledge of dangerous defects, will be deemed sufficient as against demurrers, unless the facts specifically stated clearly show the contrary. *Evansville, etc., R. W. Co.* v. *Malott*, 13 Ind. App. 289; *Eureka Bl'k Coal Co.* v. *Bridgewater*, 13 Ind. App. 333.

In view of the lack of particularity in the statements concerning the mode of construction of this shifter, and especially in view of the direct averment that it was no part of the appellee's duty "to work with or operate said shifter, or any of its fastenings," nor to inspect or repair the same, we cannot say that the general averment of want of knowledge appears conclusively to be untrue.

The second paragraph contains largely the same matters as the first, with additional charges of other acts of negligence, such as failure to put guards over the cogwheels, and suffering the "rattler and the line shafting, its bearings, boxings, and fastenings, and the said cogwheels, their shaftings, boxings, bearings, and the cogs on said wheels to be and become and remain worn out, out of order, loose, worthless, and dangerous" for use by the appellee and others, and also in suffering each and every part of said machinery "to be and become and remain worn out,

loose, out of order, and dangerous." It is further averred that the accident happened "because and on account of each and every part of said defect[ive] and dangerous condition of said machinery and appliances, and of every part thereof, as aforesaid."

Since our practice authorizes plaintiffs, in such actions as this, to plead in one paragraph various different defects as the cause of the injury, we cannot, in considering the complaint, confine ourselves to a consideration of one or more only, to the exclusion of the others. Nor is the plaintiff to be thus restricted in his proof. Upon the trial it is sufficient if he prove so many of the acts of negligence charged as will establish his case. *Diamond Block Coal Co.* v. *Edmonson*, 14 Ind. App. 594, and cases cited; *Standard Oil Co.* v. *Bowker*, 141 Ind. 12.

There was no error in overruling the demurrers.

We come now to the questions presented by the motion for a new trial.

It was proved, by the sheriff's return upon the summons, that it was served on appellant before the expiration of the two years, by which the cause of action would have been barred.

In considering the sufficiency of the evidence to sustain the verdict, it must be borne in mind that, by its general verdict, the jury, whose members saw and heard the witnesses, observed their manner, their apparent intelligence and bias, has found all the facts essential to a recovery in appellee's favor. This verdict has received the approval of the trial judge. To us, upon appeal, it is not allowable to reverse the judgment upon the evidence, unless there be an entire lack of evidence, either direct or inferential, to sustain some fact absolutely necessary to appellee's success.

There is evidence to establish the following facts:

Appellee was a laborer, who had been hired about a year before the accident, to help generally, and who had been employed for eight or nine months to shovel coal, to oil the shaftings and pulleys in appellant's large shops, and also to repair the belts when called upon for that purpose. No express duty of inspection or examination of machinery was imposed upon him by the terms of his contract or the directions of his superior. One piece of machinery which he oiled was a rattler, a large iron cylinder about four feet in diameter, in which boiler flues were placed to be rolled about and thus cleaned. The power was transmitted to it by a large cogwheel, on which worked a smaller one. The latter was attached to a shaft, which was caused to revolve by a belt running over two pulleys, one upon it and another upon the main shaft. Upon the small shaft which connected with the cogwheel, were two pulleys, one next to the cogwheel, which was loose, and the other attached to the shaft and called a fast pulley, 1-16 to 3-8 of an inch east of the former. When the belt was on the latter, the rattler and cogwheels were in motion. When upon the loose pulley the latter revolved, but the shaft and machinery remained fixed. When the machinery was in motion, the loose pulley would also revolve, but it could be readily stopped. A lever extended under the framework, to which the shaft was fixed. Upon the end next to the belt were two arms extending upward above the belt, by which, when the handle of the lever in front was pushed the one way or the other, the belt was shifted to the one pulley or the other. Above the handle in front was a metal disc with holes, through which pins were let down, which held the shaft in place. While appellee was oiling the loose pulley, just as he had been directed to do by his su-

perior, the belt suddenly slipped over upon the loose pulley, far enough to put it in rapid motion, whereby his left hand, which was resting upon it to hold it still, was thrown into the cogwheels and crushed. Appellee had been in the habit of using the shifter at various times in his work.

Appellant's theory of the accident is that it was caused by the unsafe manner in which appellee undertook to do the work, and by his sleeve catching in the cogwheels, and not by reason of the belt's suddenly slipping over. It further claims that appellee, having had full opportunity to learn of the defects and the dangers, assumed all risks.

There is evidence that some of the holes in the disc had worn from an eight to three-sixteenths of an inch larger than they originally were, and that thus, when the pin was dropped in, it would slip a little to one side, allowing some play to the shifter. There was also evidence that the continued use of the machine had caused the wood about the boxing in which the east end of the shaft rested, to become worn so that when a heavy strain was put upon the belting the shaft was drawn from a quarter to half an inch out of line. As a result, there was an inclination for the belt to slip west toward the loose pulley, which varied in its distance from the fast pulley with the pull from 1-16 to 1-4 of an inch.

It was within the range of the evidence for the jury to conclude that the pulleys happened to be quite close together when an extra strain was thrown upon the belt; that by the shaft being out of line the belt tended to slip toward the loose pulley far enough to catch it and set it in motion, and this was not prevented by the shifter, because of the play allowed it by a loose pin.

Granting that there was not any actionable negli-

The Pennsylvania Co. *v.* Witte.

gence in relation to the shifter, yet we have the loose-
ness of the boxing, caused by the worn condition of
the frame in which it rested, as a prime factor in pro-
ducing the injury. This condition the jury found to
have been such as appellant should have discovered
and remedied, although appellant's witnesses denied
the existence of the defect, and in some instances the
possibility of the alleged results.

It does not appear conclusively that either the de-
fect or the consequent danger were open and obvious
to one upon whom rested no duty of inspection, and
who was possessed of no special mechanical skill.
When once the existence of the defect is conceded, as
for the purpose of this case it must be, the fact that it
was not known to so many skilled men, upon whom
rested more or less of the duty of inspection, would
seem to demonstrate pretty clearly that the defect
was not open and obvious. As to the consequent
danger, caused by the belt slipping westward when
the east end of the shaft was pulled nearer to the main
shaft, it would be hardly fair to bind appellee, a com-
mon laborer, to knowledge of this probable result,
when learned counsel seemed, upon the trial, to be
slow to believe that such could be the result, even
after numerous witnesses had testified thereto, and
when Henderson, the foreman of the shops, himself
testified that if the shaft did get out of line a quarter
of an inch it would not have any effect upon the run-
ning of the belt.

Nor are we content to accede to appellant's argu-
ment that appellee had just as good an opportunity to
discover the defect as appellant, and that since neither
had actual knowledge neither can be chargeable with
imputed knowledge.

The rule is undoubtedly correctly stated in the quo-
tations made from several cases, that "where the

danger is equally open to the observation of both the master and the servant, both are upon common ground, and the master is not liable, as a general rule, for resulting injuries." *Evansville, etc., R. R. Co.* v. *Henderson,* 134 Ind. 636; *Swanson* v. *City of LaFayette,* 134 Ind. 625; *Griffin* v. *Ohio, etc., R. W. Co.,* 124 Ind. 326; *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18.

The difficulty in this case is that while, under the evidence, the jury might doubtless have found that no defect existed, or, if it did, that the danger was open and obvious, it did not so find, but just the contrary.

The duty of inspection is, by law, imposed upon the master. He is under obligation to search for and discover, if discoverable by proper examination, those things which are hidden from even the careful observation of the servant in the discharge of his ordinary duties. As to those hidden or concealed defects, master and servant are not upon an equality of obligation. The master must search diligently, the the servant observe carefully. *Wabash, etc., R. W. Co.* v. *Morgan,* 132 Ind. 430; *Linton Coal, etc., Co.* v. *Persons,* 11 Ind. App. 264; *Louisville, etc., Co.* v. *Quinn, supra* ; *Pittsburgh, etc., R. W. Co.* v. *Woodward, supra; Salem Stone, etc., Co.* v. *Tepps,* 10 Ind. App. 516.

We have given to the voluminous evidence and to the exhaustive briefs of the learned counsel careful consideration, and are firmly of the opinion that we would not be justified in setting aside the verdict upon the evidence.

Some objection is offered to evidence concerning repairs made after the accident, which are usually inadmissible. That evidence of the fact of subsequent

repairs is inadmissible to prove prior negligence is the law. *Terre Haute, etc., R. R. Co.* v. *Clem*, 123 Ind. 15; *Board, etc.,* v. *Pearsons*, 129 Ind. 456; *Muncie Pulp Co.* v. *Jones, supra.*

It does not, however, necessarily follow, merely because the fact is ascertained while making subsequent repairs, that a party will be debarred from showing the condition disclosed shortly after the accident, when that throws light upon, and tends to prove the condition existing before the accident.

We do not feel called upon to give to this question any more extended consideration, from the fact that the only reference made to such objectionable evidence indicates page 83 of the record as disclosing it. Both the questions relating to this subject there found were asked and answered before any objection was made. It is, ordinarily, too late to urge an objection to a question when a party has waited and taken his chances upon a favorable answer. *Storms* v. *Lemon*, 7 Ind. App. 435, although there are circumstances under which parties will not thus be estopped.

It is said that the first instruction given does not state the issue fully, but wherein it fails is not made manifest by counsel.

Some mild criticism is offered to the language of the second instruction that "it was the duty of the defendant to provide reasonably suitable and safe machinery," etc., it being said that the duty is only *to exercise reasonable care* to provide, etc., not absolutely to provide. The phraseology used is that of the Supreme Court in *Indiana Car Co.* v. *Parker*, 100 Ind. 181 (187); Buswell Pers. Injs., section 192, and other text books. While the obligation is frequently expressed, as indicated by counsel, we are by no means prepared to say that that used by the trial court is in-

accurate when used in connection with the proposition that for a negligent violation of that duty the master must respond.

Since, however, the duty as expressed in this charge is, in language, so far as relates to the point under consideration, identical with that declared by a charge given to the jury at the request of appellant, it certainly has no cause for complaint.

The charge is not subject to the objection that it undertakes to define the basis upon which appellee may recover, and omits the essential factor of want of knowledge, as was the case in *Kentucky, etc., Bridge Co.* v. *Eastman, supra.*

The charge under consideration deals with the results of negligence alone, and, under certain contingencies, declares that "the employer, *as to this question,* would be liable." In other charges appellant was given the fullest benefit of the doctrine of "assumption of the risk."

The motion for a new trial questions the correctness of instructions 3, 4, and 5 jointly, not severally.

We find in the record no cause for reversal.

Judgment affirmed.

Filed March 26, 1896.

## Opinion on Petition for Rehearing.

Gavin, J.—Counsel for appellant earnestly insist that the taking down of the shaft and the discovery that the boxing was loose, was "months" after the accident. The high standing of counsel, and our regard for them, lead us to call attention to the incorrectness of this position.

On record p. 83, l. 20, 21, the witness who testified with reference to this matter, states that this occurred within "a day or two after Witte got hurt."

We have given to the arguments advanced in the petition full consideration, but are not in accord with the view of the case therein put forth.

Petition overruled.

Filed June 18, 1896.